UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JAMES E. WASHINGTON, | : | Case No. 3:21-cv-00253 |
| Plaintiff, | : | District Judge Michael J. Newman |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| DAYTON AREA BOARD OF REALTORS, *et al.*, | : | |
| Defendants. | : | |

# ORDER

Plaintiff James E. Washington is a resident of Dayton, Ohio. He is a real estate broker. He asserts in his *pro se* Complaint that the Dayton Area Board of Realtors (DABR) began interfering with his real estate business after he "recommended that the DABR recommend to its Board of Directors [*sic*] invite all Realtors to review the exhibit at the Library on redlining." (Doc. No. 2, PageID 28). Plaintiff states that "HUD was at the root cause of Redlining and Discrimination in the mid-thirties," so he made this recommendation after he "learned that 'DABR' had signed a voluntary affirmative marketing agreement with HUD." *Id.* He seeks two forms of relief: (1) an order requiring a forensic examination of the computers used by certain individuals at the Board of Realtors, who he believes are responsible for interfering with his real estate business, particularly via the MLS system, and (2) an estimated $900,000 in damages. *Id.* at 29.

The Court previously granted Plaintiff's Motion for Leave to Proceed *in forma pauperis* under 28 U.S.C. § 1915. The case is presently is before the Court for an initial

review to determine whether it, or any portion of it, must be dismissed for failing to raise a plausible claim for relief or because it is factually or legal frivolous. *See* 28 U.S.C. § 1915(e); *see also Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010); *Barnett v. Kalamazoo Cnty. Community Health Bd.*, No. 18-1319, 2018 WL 4492496, at *1 (6th Cir. 2018). A claim is plausible when the complaint's factual allegations "'raise a right to relief above the speculative level,'" *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) (citations omitted), and create a "'reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

A complaint is dismissed as frivolous only when it fails to raise "'a claim with an arguable legal claim based on rational facts.'" *Brand v. Motley*, 526 F.3d 921, 923 (6th Cir. 2008) (quoting, in part, *Neitzke v. Williams,* 490 U.S. 319, 325 (1989)). A rational factual basis is absent when the complaint's allegations are "fantastic or delusional." *Id.* No arguable legal claim exists when the complaint rests on "indisputably meritless" legal theories—for example, when the defendant is immune from suit or when the plaintiff claims a violation of a legal interest that clearly does not exist. *See id.*

The present *sua sponte* review begins by accepting Plaintiff's allegations as true and liberally construing his *pro se* Complaint in his favor. *See Hill*, 630 F.3d at 471; *Davis v. Prison Health Services*, 679 F.3d 433, 437 (6th Cir. 2012); *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999); *see also Lee v. Wilson County Jail, Lebanon*, No. 16-5981, 2017 WL 2819220, at *1 (6th Cir. 2017). Doing so squarely places Plaintiff's claims under 42 U.S.C. § 1985(3), which requires that he allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Center for Bio—Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (citing *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)).[1]  Further, "[t]he Supreme Court requires that § 1985 claims contain allegations of 'class-based, invidiously discriminatory animus.'"  *Webb v. United States*, 789 F.3d 647, 672 (6th Cir. 2015) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 29 L.Ed.2d 338 (1971)).

A primary issue, however, is that Plaintiff does not directly allege that Defendants were engaged in a conspiracy.  In fact, he does not use the term conspiracy, or any similar term, at all—which raises concerns about specificity.  *See Center for Bio-Ethical Reform, Inc.*, 477 F.3d at 832 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987) (stating that "conspiracy claims must be pled with some degree of specificity…").  Instead, he recounts a series of separate events that occurred after his recommendation.

Plaintiff claims that after he made the recommendation about the exhibit on redlining, his real estate business was "instantly" impacted.  For example, he indicates that his "MLS property listings were vandalized [and] pictures [were] removed."  (Doc. No. 2, PageID 28).  His "ability to use the MLS system was de-activated."  *Id.*  He asserts that "Defendants accused [him] of destroying his MLS listings," but that a forensic exam would prove otherwise.  *Id.*  Plaintiff believes that several individuals, identified by last name

---

[1] Plaintiff primarily relies on the "Ku Klux Klan Act, 1871 Civil Rights Act," which is now codified in 42 U.S.C. § 1985(3).  (Doc. No. 2, PageID 27); *see Griffin v. Breckenridge*, 403 U.S. 88, 98-99 (1971).

only, are responsible for interference with the MLS system. *Id.* at 29. He refers to these individuals (i.e., Ullery, Stokes and Brenner-Lawson) as "defendants," but does not identify them as defendants in his Complaint. *Id.* at 31-33. He also asserts that he has been inundated by phone calls with "fake questions about fake properties and time wasting activities," but it is unclear who is responsible for these phone calls. *Id.* at 29.

Plaintiff also avers that he was "instantly charged $425.00 in fines," and also received an ethics complaint for violations of certain articles in the "whatever." *Id.* at 28. He asserts that the only witness at his ethics hearing "was incapacitated, in a wheel chair and could not speak." *Id.* After his ethics hearing, which was conducted by Ethics Committee Chairman Brian Sharp, other unnamed realtors "started to complain about [his] listings, [make] appointments to show [his] property, and did not show up…" *Id.*

Accepting these allegations as true and liberally construing his *pro se* Complaint in his favor, Plaintiff does not set forth sufficient facts that demonstrate how these separate actions and occurrences—which are attributed to different groups and individuals—were in furtherance of a conspiracy. Plaintiff does not provide any facts that link the alleged conspirators and their conduct. *Aladimi v. Hamilton County Justice Center, et al.*, No. 1:09-cv-398, 2012 WL 292587, at *18 (S.D. Ohio, Feb. 1, 2012) (Bowman, M.J.), report and recommendation adopted, 2012 WL 529585 (S.D. Ohio, Feb. 17, 2012) (Barrett, D.J.) (citing *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("A plaintiff must make sufficient factual allegations to link two alleged conspirators and to establish the requisite 'meeting of the minds' essential to the existence of the conspiracy."). He also does not establish that Defendants shared a common discriminatory animus aside from indicating

the events occurred after he recommended to the DABR that all realtors view the redlining exhibit at the local library. *See Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 368 (6th Cir. 2012) (citing *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)) ("a plaintiff alleging a conspiracy to deprive her of her civil rights must establish that the alleged conspirators shared a common discriminatory objective."). For these reasons, Plaintiff fails to raise a plausible conspiracy claim under 42 U.S.C. § 1985(3).

Plaintiff's claim is also barred by the two-year statute of limitations to the extent that it originates from events that began in or around 1977. *See Quigley v. Abel*, No. 2:20-cv-5146, 2020 WL 6390163, at *4 (S.D. Ohio Nov. 2, 2020) (Deavers, M.J.), report and recommendation adopted, 2020 WL 7230016 (S.D. Ohio Dec. 8, 2020) (Sargus, D.J.). Although he primarily focuses on recent actions of Defendants and other individuals, Plaintiff explains he is entitled to actual damages due to events dating back to "1977 or so" when he was subjected to a lawsuit that impacted his income and forced him to close his real estate office. (Doc. No. 2, PageID 29). Negative publicity arising from those events cost him $300,000, which "in todays [*sic*] costs could be as much as $900,000." *Id.* Plaintiff argues he entitled to actual damages "estimated to be $900,000 plus." *Id.*

Plaintiff has not sought leave to amend his Complaint. However, given that he is proceeding *pro se*, Plaintiff shall be granted leave to file an amended complaint within twenty-one (21) days of the date of this Order to address the deficiencies described above as to each Defendant. The Court will then conduct an initial review of the amended complaint pursuant to 28 U.S.C. § 1915(e). Plaintiff is advised that the failure to file an

amended complaint within twenty-one (21) days of the date of this Order may result in dismissal of this action.

**IT IS SO ORDERED**.

October 28, 2021  *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge